*460 Per Curiam.
The Rooker-Feldman doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by “state-court losers” challenging “state-court judgments rendered before the district court proceedings commenced.” Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U. S. 280, 284 (2005). In this case, the District Court dismissed the plaintiffs’ suit on the ground that they were in privity with a state-court loser. We hold that the Rooker-Feldman doctrine does not bar the plaintiffs from proceeding, and vacate the District Court’s judgment.
I
This is the latest of several rounds of litigation involving the State of Colorado’s congressional redistricting after the 2000 census, under which the State gained a seat in the House of Representatives. Lance v. Davidson, 379 F. Supp. 2d 1117, 1121 (2005). The first round began in May 2001. When the Colorado General Assembly failed to pass a redistricting plan for the 2002 congressional elections by the close of its regular session, a group of Colorado voters asked the state courts to create a plan. The courts agreed, drawing a new map reflecting the additional district. See Beauprez v. Avalos, 42 P. 3d 642 (Colo. 2002) (en banc). The 2002 elections were held using this court-ordered plan.
The General Assembly passed its own redistricting plan in the spring of 2003, prompting further litigation — this time about which electoral map was to govern, the legislature’s or the courts’. Two suits were filed seeking to enjoin the legislature’s plan: an original action in the Colorado Supreme Court by the state attorney general seeking to require the secretary of state to use the court-ordered plan, and a similar action brought in a lower state court by several proponents of the court-ordered plan. 379 F. Supp. 2d, at 1121. After the Colorado General Assembly intervened to defend its plan in the first case, the Colorado Supreme Court held that the *461 plan violated Article V, §44, of the State Constitution, which the court construed to limit congressional redistricting to “once per decade.” People ex rel. Salazar v. Davidson, 79 P. 3d 1221, 1231 (2003) (en banc). It therefore ordered the secretary of state to use the court-created plan. We denied certiorari. 541 U. S. 1093 (2004).
The second suit Was removed to federal court by the defendants on the basis of the plaintiffs’ federal-law claims. See Keller v. Davidson, 299 F. Supp. 2d 1171, 1175 (Colo. 2004). Once Salazar was decided by the Colorado Supreme Court, the viability of the defendants’ coimterclaims was the only remaining issue. A three-judge District Court held that the defendants were barred by the Rooker-Feldman doctrine from amending their counterclaims to assert additional challenges to the decision in Salazar. It also held that the defendants’ original coimterclaims, while not barred by the Rooker-Feldman doctrine, were precluded under Colorado law. by the judgment in Salazar. Accordingly, the court dismissed the case.
Finally, this suit: Before the dismissal in Keller, several Colorado citizens unhappy with Salazar filed an action in the District Court seeking to require the secretary of state to use the legislature’s plan.[1] The plaintiffs argued that Article V, §44, of the Colorado Constitution, as interpreted by the Colorado Supreme Court, violated the Elections Clause of Article I, §4, of the U. S. Constitution (“The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof”), and the First Amendment’s Petition Clause (“Congress shall make no law ... abridging . .. the right of the people ... to petition the Government for a redress of grievances”). The defendants filed a motion to dismiss, ar *462 guing that the Rooker-Feldman doctrine and Colorado preclusion law barred any attack on the Colorado Supreme Court’s judgment in Salazar and that the plaintiffs had failed to state a valid Petition Clause claim.
The three-judge District Court ruled that under the Rooker-Feldman doctrine, it had no jurisdiction to hear the Elections Clause claim. 379 F. Supp. 2d, at 1127. The Rooker-Feldman doctrine, the court explained, includes three requirements: (1) “[T]he party against whom the doctrine is invoked must have actually been a party to the prior state-court judgment or have been in privity with such a party”; (2) “the claim raised in the federal suit must have been actually raised or inextricably intertwined with the state-court judgment”; and (3) “the federal claim must not be parallel to the state-court claim.” 379 F. Supp. 2d, at 1124. The District Court found the first requirement satisfied on the ground that the citizen-plaintiffs were in privity with the Colorado General Assembly — a losing party in Salazar. Relying on our decisions in Washington v. Washington State Commercial Passenger Fishing Vessel Assn., 443 U. S. 658 (1979), and Tacoma v. Taxpayers of Tacoma, 357 U. S. 320 (1958), the court stated that “when a state government litigates a matter of public concern, that state’s citizens will be deemed to be in privity with the government for preclusion purposes.” 379 F. Supp. 2d, at 1125. This principle, the court reasoned, applies “with equal force in the Rooker-Feldman context.” Ibid. The court went on to conclude that the Elections Clause claim was actually raised in Salazar, or inextricably intertwined with that decision, and was not parallel to the claims presented in Salazar. As to the Petition Clause claim, the court ruled that neither Rooker-Feldman nor Colorado preclusion law prevented the court from proceeding to the merits, but that the plaintiffs failed to state a claim. 379 F. Supp. 2d, at 1132; see Fed. Rule Civ. Proc. 12(b)(6).
The plaintiffs appealed. See 28 U. S. C. § 1253. We now note jurisdiction, and address whether the Rooker-Feldman *463 doctrine bars the plaintiffs from proceeding because they were in privity with a party in Salazar. We conclude it does not, and vacate the judgment of the District Court.
II
This Court is vested, under 28 U. S. C. § 1257, with jurisdiction over appeals from final state-court judgments. We have held that this grant of jurisdiction is exclusive: “Review of such judgments may be had only in this Court.” District of Columbia Court of Appeals v. Feldman, 460 U. S. 462, 482 (1988) (emphasis added); see also Atlantic Coast Line R. Co. v. Locomotive Engineers, 398 U. S. 281, 286 (1970); Rooker v. Fidelity Trust Co., 263 U. S. 413, 416 (1923). Accordingly, under what has come to be known as the Rooker-Feldman doctrine, lower federal courts are precluded from exercising appellate jurisdiction over final state-court judgments.
The Rooker-Feldman doctrine takes its name from the only two cases in which we have applied this rule to find that a Federal District Court lacked jurisdiction. In Rooker, a party who had lost in the Indiana Supreme Court, and failed to obtain review in this Court, filed an action in Federal District Court challenging the constitutionality of the state-court judgment. We viewed the action as tantamount to an appeal of the Indiana Supreme Court decision, over which only this Court had jurisdiction, and said that the “aggrieved litigant cannot be permitted to do indirectly what he no longer can do directly.” 263 U. S., at 416. Feldman, decided 60 years later, concerned slightly different circumstances, with similar results. The plaintiffs there had been refused admission to the District of Columbia bar by the District of Columbia Court of Appeals, and sought review of these decisions in Federal District Court. Our decision held that to the extent plaintiffs challenged the Court of Appeals decisions themselves — as opposed to the bar admission rules promulgated nonjudicially by the Court of Appeals — their sole avenue of review was with this Court. 460 U. S., at 476.
*464 Neither Rooker nor Feldman elaborated a rationale for a wide-reaching bar on the jurisdiction of lower federal courts, and our cases since Feldman have tended to emphasize the narrowness of the Rooker-Feldman rule. See Exxon Mobil, 544 U. S., at 292 (Rooker-Feldman does not apply to parallel state and federal litigation); Verizon Md. Inc. v. Public Serv. Comm’n of Md., 535 U. S. 635, 644, n. 3 (2002) (Rooker-Feldman “has no application to judicial review of executive action, including determinations made by a state administrative agency”); Johnson v. De Grandy, 512 U. S. 997, 1005-1006 (1994) (Rooker-Feldman does not bar actions by a nonparty to the earlier state suit). Indeed, during that period, “this Court has never applied Rooker-Feldman to dismiss an action for want of jurisdiction.” Exxon Mobil, supra, at 287.
In Exxon Mobil, decided last Term, we warned that the lower courts have at times extended Rooker-Feldman “far beyond the contours of the Rooker and Feldman cases, overriding Congress’ conferral of federal-court jurisdiction concurrent with jurisdiction exercised by state courts, and superseding the ordinary application of preclusion law pursuant to 28 U. S. C. § 1738.” 544 U. S., at 283. Rooker-Feldman, we explained, is a narrow doctrine, confined to “cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.” 544 U. S., at 284.
Although we have never addressed the precise question before us, we have held Rooker-Feldman inapplicable where the party against whom the doctrine is invoked was not a party to the underlying state-court proceeding. See De Grandy, supra, at 1006. In De Grandy, the State of Florida sought, using Rooker-Feldman, to prevent the United States from bringing a challenge under §2 of the Voting Rights Act of 1965 to the reapportionment of state electoral districts. The Florida Supreme Court, in an action initiated by the *465 state attorney general, had already declared the law valid under state and federal law. We held that Rooker-Feldman did not bar the United States from bringing its own action in federal court because the United States “was not a party in the state court,” and “was in no position to ask this Court to review the state court’s judgment and has not directly attacked it in this proceeding.” 512 U. S., at 1006.
In the case before us, the plaintiffs were plainly not parties to the underlying state-court proceeding in Salazar. Salazar was an action brought by the state attorney general against the secretary of state, in which the Colorado General Assembly intervened. 79 P. 3d, at 1227. The four citizen-plaintiffs here did not participate in Salazar, and were not in a “position to ask this Court to review the state court’s judgment.” De Grandy, supra, at 1006; see Karcher v. May, 484 U. S. 72, 77 (1987) (“[T]he general rule [is] that one who is not a party or has not been treated as a party to a judgment has no right to appeal therefrom”).
Although the District Court recognized the “general rule” that “Rooker-Feldman may not be invoked against a federal-court plaintiff who was not actually a party to the prior state-court judgment,” 379 P. Supp. 2d, at 1123, it nevertheless followed Tenth Circuit precedent in allowing application of Rooker-Feldman against parties who were in privity with a party to the earlier state-court action, 379 F. Supp. 2d, at 1123 (citing Kenmen Eng. v. Union, 314 F. 3d 468, 481 (2002)). In determining whether privity existed, the court looked to cases concerning the preclusive effect that state courts are required to give federal-court judgments. 379 F. Supp. 2d, at 1125 (citing Washington, 443 U. S., at 693, n. 32; Taxpayers of Tacoma, 357 U. S., at 340-341). It concluded that — for Rooker-Feldman as well as preclusion purposes — “the outcome of the government’s litigation over a matter of public concern binds its citizens.” 379 F. Supp. 2d, at 1125.
*466 The District Court erroneously conflated preclusion law with Rooker-Feldman. Whatever the impact of privity principles on preclusion rules, Rooker-Feldman is not simply preclusion by another name. The doctrine applies only in “limited circumstances,” Exxon Mobil, supra, at 291, where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court. The Rooker-Feldman doctrine does not bar actions by nonparties to the earlier state-court judgment simply because, for purposes of preclusion law, they could be considered in privity with a party to the judgment.[2]
A more expansive Rooker-Feldman rule would tend to supplant Congress’ mandate, under the Full Faith and Credit Act, 28 U. S. C. § 1738, that federal courts “ ‘give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged.’” Baker v. General Motors Corp., 522 U. S. 222,246 (1998) (quoting Kremer v. Chemical Constr. Corp., 456 U. S. 461, 466 (1982)); see Exxon Mobil, supra, at 293. Congress has directed federal courts to look principally to state law in deciding what effect to give state-court judgments. Incorporation of preclusion principles into Rooker-Feldman risks turning that limited doctrine into a uniform federal rule governing the preclusive effect of state-court judgments, contrary to the Full Faith and Credit Act.[3]
*467 * * *
The judgment of the District Court is vacated, and the case is remanded for further proceedings consistent with this opinion.

It is so ordered.

 Although the secretary of state defended the legislature’s plan in Salazar, following that decision she agreed to defend the court-ordered plan in this litigation and to allow the state attorney general to represent her. 379 F. Supp. 2d 1117, 1122, n. 3 (Colo. 2005).

 In holding that Rooker-Feldman does not bar the plaintiffs here from proceeding, we need not address whether there are any circumstances, however limited, in which Rooker-Feldman may be applied against a party not named in an earlier state proceeding — e. g., where an estate takes a de facto appeal in a district court of an earlier state decision involving the decedent.

 Our holding also disposes of the claim, which the District Court did not reach, that plaintiffs were barred by Rooker-Feldman because they were in privity with the secretary of state, the other losing party in People ex rel. Salazar v. Davidson, 79 P. 3d 1221 (Colo. 2003) (en banc). We do not pass on the District Court’s resolution of the merits of the plaintiffs’ Petition Clause claim.