NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3194
_____

R. S., A MINOR, BY HIS PARENTS;
R. D. S.; S. S.,
Appellants

v.

BUTLER COUNTY, PENNSYLVANIA; AMY SWIGART, INDIVIDUALLY AND IN
HER OFFICIAL AS JUVENILE PROBATION OFFICER, BUTLER COUNTY;
WILLIAM RUMBAUGH,
INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS SUPERVISOR,
BUTLER COUNTY DEPARTMENT OF COMMUNITY CORRECTIONS AND
JUVENILE COURT SERVICES;
THOMAS DOERR, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY
AS PRESIDENT JUDGE FOR THE BUTLER COUNTY JUVENILE COURT;
VICTOR E. VOUGA, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS
JUVENILE COURT MASTER FOR THE BUTLER COUNTY JUVENILE COURT;
RUSSELL KARL, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS
ASSISTANT DISTRICT ATTORNEY FOR BUTLER COUNTY JUVENILE COURTS
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(W.D. Pa. No. 2-15-cv-00339)
U.S. District Judge: Honorable Cathy Bissoon
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
May 25, 2017

Before:  HARDIMAN, ROTH, and FISHER, *Circuit Judges.*

(Filed: June 27, 2017)

_____

OPINION[*]

_____

FISHER, *Circuit Judge*.

Two parents sued a host of defendants involved in their child's juvenile

delinquency proceedings. They allege violations of the Fourteenth Amendment, the

Rehabilitation Act (RA), and the Americans with Disabilities Act (ADA). The District

Court dismissed their claims on various grounds, including judicial immunity, Eleventh

Amendment immunity, prosecutorial immunity, the *Rooker-Feldman* doctrine, and

failure to state a claim. We will affirm.

I.

R.S., a minor child with mood, anxiety, and attention deficit hyperactivity

disorders, received delinquency charges for two incidents at school. He entered a consent

decree under which he agreed to a term of probation in exchange for suspension of his

charges.

The child's juvenile probation officer, Amy Swigart, later received word that the

child was involved in three other incidents at school. She visited him there where he

"began yelling and screaming" and "fell upon the floor crying and flailing his arms and

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

legs," kicking her in the process.[1] Swigart informed the child's parent, S.S., that the child would be punished.

With little notice, a detention hearing was held for the child before juvenile court master Victor Vouga. Vouga recommended that the child serve five days in a juvenile detention facility pending a consent decree revocation hearing. President Judge Thomas Doerr of the Butler County Court of Common Pleas adopted that recommendation, ordered the child detained, and denied the child's motion for reconsideration. After the child was released from detention, his consent decree was revoked and a new one was entered adding an additional term of probation.

The child and his parents, S.S. and R.D.S., sued Swigart, Vouga, Judge Doerr, William Rumbaugh (Swigart's supervisor), Russell Karl (the assistant district attorney who prosecuted the child), and Butler County in the District Court, seeking damages and equitable relief for their constitutional, RA, and ADA claims. The District Court dismissed their claims on the grounds listed above.

The family filed this timely appeal challenging only the dismissal of their RA and ADA claims against Butler County.[2]

---

[1] J.A. 22.

[2] *See* R.S. Br. 4. As the family expressly "decline[s] to appeal the dismissal of all other claims," *id.*, we need not and do not address them.

II.

We address jurisdiction first. Ours comes from 28 U.S.C. § 1291. The District Court's arose under 28 U.S.C. § 1331. But the County argues that the *Rooker-Feldman* doctrine strips the District Court of jurisdiction over the family's RA and ADA claims against the County. Exercising plenary review,[3] we conclude that *Rooker-Feldman* indeed applies but only with respect to the child's claims.

In certain circumstances, *Rooker-Feldman* deprives federal district courts of jurisdiction to review state-court judgments. In *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, the Supreme Court emphasized the doctrine's narrow scope, holding that it is confined to cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."[4] In *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, we broke down *Exxon Mobil*'s holding into four requirements: (1) the federal plaintiff must have lost in state court, (2) the plaintiff must complain of injuries caused by the state-court judgment, (3) that judgment must have issued before the federal suit was filed, and (4) the plaintiff must be inviting the district court to review and reject the state-court judgment.[5]

---

[3] *Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 547 (3d Cir. 2006).
[4] 544 U.S. 280, 284 (2005); *see Lance v. Dennis*, 546 U.S. 459, 464 (2006).
[5] 615 F.3d 159, 166 (3d Cir. 2010).

4

On *Rooker-Feldman*'s first requirement, we find that the child lost in state court. Over his appointed counsel's objection, he was ordered detained for five days and lost on his reconsideration motion. However, we cannot say the same for the child's parents. As the Supreme Court held in *Lance v. Dennis*, the *Rooker-Feldman* doctrine does not apply "where the party against whom [it] is invoked was not a party to the underlying state-court proceeding."[6] The parents were not parties to the child's juvenile case. The complaint does not suggest they were. Even if it did, Pennsylvania's Rules of Juvenile Court Procedure make plain that the parties to a juvenile delinquency proceeding are the "juvenile and the Commonwealth."[7] Attempting to leap this hurdle, the County argues that the parents are in privity with the child. That may be. But *Lance* says *Rooker-Feldman* does not bar "actions by nonparties to the earlier state-court judgment simply because, for purposes of preclusion law, they could be considered in privity with a party to the judgment."[8] We therefore reject the County's privity argument and decline its invitation to forge new ground under the hypothetical left open in *Lance*.[9] *Rooker-Feldman* does not apply to the parents' claims, as the parents did not lose in state court.

Returning to the child's RA and ADA claims, we find that *Rooker-Feldman*'s second requirement is satisfied. In support of his RA and ADA claims, the child complains of injuries caused directly by state-court judgments: Judge Doerr's detention

[6] 546 U.S. at 464.
[7] 237 Pa. Code § 120 ("PARTIES are the juvenile and the Commonwealth.").
[8] 546 U.S. at 466.
[9] *See* Butler Cty. Br. 13 (citing *Lance*, 546 U.S. at 466 n.2).

5

and consent decree revocation orders. In the complaint, the child alleges discrimination in violation of the RA and ADA caused by, for instance, the "ultimate[] order[]" that he be detained, the failure to consider "reasonable accommodations" that would have "prevented" his detention, and the "revo[cation]" of his consent decree.[10] These allegations, we hold, meet *Rooker-Feldman*'s second requirement. We note that the child also alleges injuries arising from the County's failure to train its employees and from the inadequate notice he received before his detention hearing. But these allegations were pleaded in support of his constitutional claims,[11] which he abandoned on appeal.

*Rooker-Feldman*'s third requirement is also satisfied with respect to the child's RA and ADA claims against the County. Judge Doerr's March 2013 orders issued well before this case began in the District Court in March 2015.

Finally, we hold that the child's RA and ADA claims satisfy *Rooker-Feldman*'s fourth requirement, which is "closely related" to the second.[12] We ask if the plaintiff's claims would require appellate review of a state-court decision by the district court.[13] They would in this case. The child invited the District Court to review and reject Judge Doerr's detention and revocation orders for their failure to incorporate reasonable accommodations accounting for his disabilities. These failures, the child alleges, violated the RA and ADA. The child's claims are thus a request for "[p]rohibited appellate

[10] J.A. 28–31.
[11] *See* J.A. 32–33.
[12] *Great W. Mining*, 615 F.3d at 168.
[13] *Id.* at 169.

review," which "consists of a review of the proceedings already conducted by the [state court] to determine whether it reached its result in accordance with law."[14]

Because *Rooker-Feldman*'s four requirements are satisfied, the District Court lacked jurisdiction over the child's RA and ADA claims against the County. We will affirm the District Court's order dismissing these claims.

### III.

### A.

We turn now to whether the parents set out plausible RA or ADA claims against the County.[15] We agree with the County that they did not. We will therefore affirm dismissal of these claims under Federal Rule of Civil Procedure 12(b)(6).

The provision of the RA that the plaintiffs relied on in their complaint says, "No otherwise qualified individual with a disability" shall, "solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."[16] The provision of the ADA they relied on similarly says, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be

---

[14] *Id.* (internal quotation marks and citation omitted).

[15] "We exercise plenary review of a Rule 12(b)(6) dismissal, affirming if the plaintiff failed to allege plausible claims." *Doe v. Mercy Catholic Med. Ctr.*, 850 F.3d 545, 552 (3d Cir. 2017) (citations omitted).

[16] 29 U.S.C. § 794; *see* J.A. 28.

denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[17]

On appeal, the parents argue that, although they are not disabled, they too suffered disability discrimination because of their association with their disabled son. This contention is not without some support in the law: We've recognized that nondisabled persons may sue under the RA and ADA when they've suffered discrimination because of their association with a disabled person.[18] But assuming the RA and ADA apply to juvenile proceedings — a question we need not and do not address — the complaint does not support the parents' arguments on appeal.

The complaint is devoid of factual allegations from which we may plausibly infer that the parents were personally excluded from participation in or denied the benefits of a covered activity or subjected to discrimination because of their son's disability.[19] The complaint references only the parents' "continued . . . emotional distress," the "family therapy" they've engaged in, and their difficulties "work[ing] through the anxiety and trauma" that their child's "removal from the home and detention caused."[20] These allegations fail to show plausible associational-disability discrimination. As for the rest of

---

[17] 42 U.S.C. § 12132; *see* J.A. 29.

[18] *See Addiction Specialists, Inc. v. Twp. of Hampton*, 411 F.3d 399, 405 (3d Cir. 2005).

[19] *See McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1142 (11th Cir. 2014) (A nondisabled person "has standing to bring suit under the ADA only if she was personally discriminated against or denied some benefit because of her association with a disabled person.").

[20] J.A. 27–28.

the complaint, it focuses solely on the discrimination the disabled child suffered, not on any discrimination his nondisabled parents suffered. For example, in support of the plaintiffs' RA claim, the complaint states: "This is an action by Plaintiffs against Defendants *for violations of R.S.'s rights*" under the RA; "*R.S. was entitled to be free from discrimination* based on his disability"; "Defendants discriminated *against R.S.*" in violation of the RA; "Defendants *denied R.S.* an equal opportunity" under the RA; and defendants acted with "deliberate indifference to *R.S.'s* disabilities."[21] Likewise, in support of the ADA claim, the complaint provides: "*R.S. was entitled to be free from discrimination*" based on his disability; "Defendants discriminated *against R.S.*" in violation of the ADA; "Defendants *denied R.S.* an equal opportunity" under the ADA; and defendants acted with "deliberate indifference to *R.S.'s* disabilities."[22] In the absence of plausible factual allegations of associational-disability discrimination, the District Court's dismissal of the parents' RA and ADA claims was appropriate.

B.

We end with the family's contention that the District Court abused its discretion in dismissing their complaint with prejudice without granting them leave to amend. We find no abuse of discretion here.

Unlike a district court, we do not directly grant or deny parties leave to amend their pleadings under Rules 15 and 16. Thus, a litigant seeking another chance to amend

---

[21] J.A. 28–29 (emphases added).
[22] J.A. 29–30 (emphases added).

her pleadings on appeal must convince us — a court of review — that the district court abused its discretion in granting or denying her *request* for leave to amend. Where a litigant never requests leave to amend in the district court, we "can hardly fault" a district court for not granting it.[23]

That's what happened here. The record shows that the family never filed a motion in the District Court for leave to amend their complaint that referenced the new allegations they set out in their brief on appeal. Instead, immediately after the District Court issued its opinion and order dismissing their claims with prejudice, the plaintiffs filed their notice of appeal. The District Court thus never had the opportunity to exercise, let alone abuse, its discretion to grant or deny their request for leave to amend. No abuse of discretion occurred here. While leave to amend "is freely granted, no court can be said to have erred in failing to grant a request that was not made."[24]

IV.

For these reasons, we will affirm the District Court's order.

---

[23] *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 253 (3d Cir. 2007); *accord Alaska v. United States*, 201 F.3d 1154, 1163–64 (9th Cir. 2000).

[24] *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 139–40 (2d Cir. 2011) (internal quotation marks and citation omitted).